UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEVEN L. SMITH, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 21-cv-12056-DJC |
| MARGARITA DAOU, et al., | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

**CASPER, J.**                                                                    September 1, 2022

*Pro se* plaintiff Steven L. Smith ("Smith"), a pretrial detainee, has filed a civil action under 42 U.S.C. § 1983 against numerous individuals employed at the Worcester Recovery Center and Hospital ("WRCH") as doctors, nurses, and other staff. Smith, who is awaiting trial for rape of a child, was confined for a time at WRCH for evaluation of his competency to stand trial. See D. 1-2 at 1.

Smith also names one of his former criminal defense attorneys as a defendant, alleging that he improperly engineered the competency evaluation and refused to obtain evidence that would be helpful to Smith's defense. Finally, Smith names the Provincetown police detective who arrested him after a minor reported that Smith sexually assaulted him. Smith maintains that the detective falsely stated to others that Smith had a record of previously assaulting another minor.[1] Smith has filed a motion for leave to proceed *in forma pauperis* and other various motions.

---

[1] Smith represents that that he is asserting "identical" claims in a petition he is filing in the Supreme Judicial Court under Mass. Gen. L. c. 211 § 3, by which he is seeking dismissal of the indictment and restoration of his liberty. Compl., D. 1, at 4. According to public records, his pursuit of relief under Mass. Gen. L. c. 211 § 3 has been unsuccessful. See Commonwealth v. Smith, SJ-2022-0125 (Mass. Supreme Judicial Ct. Apr. 1 and May 11, 2022), (denying Smith's request to a single

1

For the reasons stated below, the Court ALLOWS the motion for leave to proceed *in forma pauperis*, D. 2, and will allow Smith to pursue his claim against certain WRCH employees who allegedly failed to protect him from an assault by another patient. The Court will dismiss all other claims without prejudice. The Court addresses other pending motions, D. 6, 7, 9, 11, 13, 16, 32, 33-35, 39 and 48, as set forth below.

## I.  Smith's Factual Allegations

The Court summarizes Smith's factual allegations, treating all well-pled allegations as true, as it must for purposes of this Order.

### A.  Detective Meredith Lobur

On July 5, 2018, Defendant Meredith Lobur, a detective with the Provincetown Police Department, arrested Smith after a 15-year-old boy called 911 and reported that Smith had sexually assaulted him. D. 1 at 6. Lobur examined Smith's criminal record and discovered that it included a 2012 police report from Connecticut in which Smith's neighbor had reported that Smith was on the Connecticut Sex Offender Registry, had failed to register, and had molested her two sons. Id. According to Smith, this was a false allegation based on the neighbor's mistaken belief that Smith was one of the four persons on the Connecticut Sex Offender Registry named "Steven Smith." Smith reports that he cooperated with the police in the investigation, he was never charged for a crime, and he had been completely exonerated. Id. at 6-7.

---

justice to vacate evaluations of his competency because he had an adequate, alternate remedy in the Superior Court), *publicly available at* https://www.ma-appellatecourts.org/docket/SJ-2022-0125 (last visited Sept. 1, 2022); Commonwealth v. Smith, SJ-2021-0450, D. 8 (Mass. Supreme Judicial Ct. Jan. 4, 2022) (holding that Smith could not challenge interlocutory rulings *pro se*), *publicly available at* https://www.ma-appellatecourts.org/docket/SJ-2021-0450 (last visited Sept. 1, 2022).

Smith claims that, notwithstanding the resolution of this matter in his favor, Lobur characterized Smith as an "alleged perpetrator" with "a criminal record" of offenses "similar" to those reported on July 5, 2018, by the alleged victim. Id. at 8 (emphasis omitted). Smith further alleges that Lobur conveyed a similar message to a business associate with whom Smith previously had an "excellent rapport" and who could be a witness for Smith in his criminal action. Id. at 9.

### B. Attorney Ryan Matthews

Smith indicates that Defendant Ryan Matthews was his fifth court-appointed attorney. Id. at 17. Smith alleges that Matthews violated his civil rights by having him declared incompetent and failing to provide effective assistance of counsel. Id. Smith claims that Matthews told the state court and persons involved with his competency evaluation that Smith was "narcissistic, hyper-focused, paranoid, delusional, fixated on minute details of [his] case," and that his previous lawyers "had withdrawn because of [his] mental defects and that no attorney could work with [Smith] given these trains and disorders." Id. at 18.

Smith alleges that the doctors who subsequently authored reports concerning his alleged incompetency relied heavily upon Matthews's stated opinion of Smith. Id. Smith claims that Matthews's conduct in this regard resulted in Smith's loss of his constitutional right to represent himself in the criminal proceeding. Id.

### C. Dr. Dinsmore and Dr. Murray

Defendants Dr. Murray and Dr. Dinsmore conducted competency examinations of Smith at WRCH. Smith maintains that, instead of conducting their own thorough examinations of Smith, they relied almost exclusively upon the derogatory and false statements made by Matthews and the criminal court concerning Smith. Id. at 34-36, 48. In addition, Smith claims that neither doctor

considered the report of a psychiatrist who had, earlier in the same criminal proceeding, conducted a thorough evaluation of Matthews and found him to be competent. Id.

### D. WRCH Social Worker Sherry Hannen and WRCH Staff Members Aaron, C.J., Sean,[2] Nielsa, Ali, and Siekron

Smith alleges that, at some point, he told Defendant Sherry Hannen, Smith's social worker at WRCH, that a staff member had told Kyle, who was another patient at WRCH, that Smith had been charged with rape of a child, and that Kyle had been threatening Smith. Id. at 29. Smith claims that he conveyed the same message to his team doctor, Defendant Dr. Margarita Daou. Id. at 30. According to Smith, he was "directed to stop telling people [his] charges and that it wasn[']t staff that told Kyle [his] own charges but [his] own self!" Id. at 30. Smith maintains that he never "initiated the revelation of [his] charges . . . rather, a [correctional officer] or staff made certain the inmates/patients were privy to [his] criminal charges," which left Smith with "no choice but to explain them . . . or suffer their wild ideas." Id. (ellipses in original and emphasis omitted).

Smith alleges that, for three days, WRCH staff members Defendants Aaron, C.J., Staff Member Sean, Nielsa, Ali and Siekron (collectively, "Staff Members") heard Kyle threaten him. Id. at 33. According to Smith's allegations, Kyle had spent several months at WRCH during prior evaluations "and had, in fact, assaulted previous patients!!!" Id. Smith states that, at the time of these threats, he was housed in the same unit as Kyle, which included a common dining and recreation area. Id. Smith claims that he was told to avoid Kyle and attempted to do so, but that Kyle's threats to Smith nonetheless escalated. Smith alleges that, one day, Kyle loudly told staff,

---

[2] In the heading of the complaint, Smith identifies "Social Worker Sean" and "Staff Member Sean" as separate defendants. D. 1 at 1. In Smith's subsequently filed motion to correct the names of Defendants and add Defendants, D. 7, Smith asks that "Social Worker Sean" be substituted with "Sean Martin, LSCW." D. 7 at 2, D. 7-4 at 2. The Court is allowing this motion in relevant part. See infra at 12. To avoid confusion in this Order, the Court will refer to the two Defendants with the first name "Sean" as "Social Worker Sean Martin" and "Staff Member Sean."

"You need to move this rapist . . . I am not playing . . . You know me . . ." Id. (ellipses in original). Smith maintains that the Staff Members "stood by and either did nothing or took no real action to keep [Smith] safe and . . . as ultimately, Kyle made good his threats, he spit into [Smith's] face and then punched [Smith] several times in the head and face." Id.

Smith claims that, thereafter, he called the "campus police" and told Defendant Nurse Sabrina that he wanted to press charges against Kyle. Smith alleges that, after campus police failed to arrive within the hour, he called 911, and that while he was speaking to the dispatcher, Staff Member Siekron "snatched the phone out of [Smith's] hands . . . . [r]ight as [he] spoke to a dispatcher." Id. at 33-34.

### E. Defendants Nurse Pam, Staff Worker Donna, Social Worker Sean Martin, Dr. Daou, and Dr. Wenzel

Smith claims that, on October 20, 2021, Defendants Nurse Pam and Staff Member Donna denied Smith's request for hot water at supper. Smith directed some vulgar language to them and was "pissed off because [he] knew that both Pam and Donna disliked [him] . . . because both of them view[ed] [him] as a child rapist." Id. at 50. According to Smith, after that incident Donna observed Smith interacting with two younger patients, Marcel and Gabrielle. Smith alleges that he was subsequently informed by another staff member that Donna had made a false report that Smith was "negatively influencing the young patients" and "exhibiting predatory behavior." Id. at 52.

Smith represents that Dr. Daou and Social Worker Sean Martin subsequently placed Smith on "constant observation," meaning that "a staff member was assigned to follow [him] 24/7 in order to prevent [him] from sexually violating [a] 19 year old." Id. at 53. Smith claims that being subject to constant observation "was one of the worst experiences [he] ha[d] ever had in [his] life" and that he "actually did consider suicide." Id. (emphasis omitted).

According to Smith, while he was subject to constant observation, WRCH Chief Executive Defendant Kathleen Wenzel had Smith moved to a different unit. Id. at 60. Smith believes that Wenzel made this housing change to prevent Marcel from helping Smith prove the "malice" of WRCH staff against Smith. Id. According to Smith, he was moved to a new unit "in retaliation for the many complaints [he] filed for being placed on [constant observation], for being pegged as a child molester/predator because [he] spent time with a 19 year old patient when only a few . . . patients were rational enough to talk (converse) and play games." Id. at 61.

Smith complains that, for "those 3-4" days he was in the in this other unit, Defendants Martin and Dr. Daou would not permit him to have recreation time. Id. at 62. Smith further alleges that he had no privacy during phone calls because he was not allowed access to a cordless telephone. Id. at 63.

### G.  Relief Sought

Smith seeks $200,000 in damages from each defendant. Id. at 75. He also seeks the revocation of Matthews's license to practice law, the revocation of the medical licenses of Dr. Dinsmore and Dr. Murray, and the revocation of Lobur's law enforcement badge. Id. at 5, 75. Although his prayer for relief includes a request that the indictment against him be dismissed and that he be released, he specifies that he is seeking such relief only from the state court. Id. at 75.

## II.  Motion for Leave to Proceed *in Forma Pauperis*

Upon review of Smith's motion for leave to proceed *in forma pauperis*, D. 2, the Court concludes that he has adequately demonstrated his inability to prepay the filing fee. Accordingly, the motion, D. 2, is ALLOWED. The $52 administrative fee is waived, but Smith must still pay the $350 filing fee over time. Pursuant to 28 U.S.C. § 1915(b)(1), the Court assesses an initial

partial filing fee of $53.29.  The remainder of the fee, $297.71, shall be paid in accordance with 28 U.S.C. § 1915(b)(2).

## III.     Review of the Complaint

Because Smith is proceeding *in forma pauperis*, the Court may conduct a preliminary review of the complaint and dismiss any portion thereof that is malicious, frivolous, fails to state a claim upon which relief may be granted, or seeks damages against a party that is immune from such relief.  See 28 U.S.C. § 1915(e)(2).  The Court also conducts this review pursuant to 28 U.S.C. § 1915A, which directs a federal district court to conduct a preliminary review of a prisoner complaint.  In conducting this review, the Court liberally construes the complaint because Smith is proceeding *pro se*.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  In addition, the Court treats all well-pleaded allegations in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

To state a claim upon which relief may be granted, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The plaintiff's obligation to provide the grounds of his claim "requires more than labels and conclusions."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must "contain sufficient factual matter, accepted as true" to state a plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The plausibility standard is not as onerous as a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).  Determining whether a pleading meets the plausibility requirement is a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." Id. at 679.

Smith brings this action under 42 U.S.C. § 1983 ("§ 1983"). To state a claim upon which relief may be granted under § 1983, a plaintiff must allege sufficient factual material from which the Court may reasonably infer that (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the United States Constitution or other federal law. See Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005). In addition, "only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." Id.

### A. Detective Lobur

Smith asserts that Lobur is liable for defamation under § 1983 because she "violated [his] due process rights, invaded [his] privacy, slandered [him], and apparently did not read the Bristol P.D. Report which is far different from a criminal charge." D. 1 at 9.

Such allegations, however, fail to state a claim under § 1983. Smith does not set forth any allegations that Lobur violated his right to due process. In addition, a government act of defamation does not, standing alone, deprive a person "of any 'liberty' protected by the procedural guarantees of the Fourteenth Amendment." Paul v. Davis, 424 U.S. 693, 712 (1976). Defamation by someone acting under color of law can give rise to a constitutional claim only when a litigant can show "an adverse effect on some interest 'more tangible' than reputational harm." URI Student Senate v. Town Of Narragansett, 631 F.3d 1, 9 (1st Cir. 2011) (quoting Paul, 424 U.S. at 701).

Finally, Smith does not allege any facts suggesting that any invasion of his privacy was in contravention of the United States Constitution. "[T]here is no 'right of privacy' found in any specific guarantee of the Constitution," but the Supreme Court has "recognized that 'zones of

privacy' may be created by more specific constitutional guarantees and thereby impose limits upon government power." Paul, 424 U.S. at 712-13. However, except for the Fourth Amendment's prohibition of unreasonable searches, "right of privacy" cases implicating constitutional rights "deal generally with substantive aspects of the Fourteenth Amendment," such as "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." Id. at 713. In these areas, "there are limitations on the States' power to substantively regulate conduct." Id. Smith's claim that Lobur invaded his privacy does not fall into any of these constitutionally protected "zones of privacy." Said claim is not based "upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private.'" Id.

### B.   Attorney Matthews

Smith also has failed to state a § 1983 claim against Matthews because Smith does not make any allegations suggesting that Matthews was acting under color of state law. It is well-settled law that "[a] private attorney who is sued for actions allegedly taken as court-appointed counsel does not act under state law." Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986) (per curiam); see Polk County v. Dodson, 454 U.S. 312, 325 (1981) (stating that, for purposes of a § 1983 claim, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding").

### C.   Dr. Dinsmore and Dr. Murray

Smith has failed to state § 1983 claims against Dr. Dinsmore and Dr. Murray because psychiatrists who are appointed by a court to conduct competency evaluations or testify in court have immunity from liability for said acts. See, e.g., Hughes v. Long, 242 F.3d 121, 127-28 (3d Cir. 2001) (citing with approval an earlier decision in which the Third Circuit "held that a prison doctor who conducted a psychiatric exam on an inmate at the request of the court had absolute

judicial and witness immunity"); Harden v. Green, 27 Fed. App'x 173, 177 (4th Cir. 2001) (per curiam) (recognizing that "court-appointed psychiatrists are entitled to absolute judicial and witness immunity for their conduct in completing competency exams and furnishing written reports"); Budnick v. Barnstable County Bar Advocates, Inc., 989 F.2d 484 (Table), 1993 WL 93133, at *5 (1st Cir. Mar. 30, 1993) (per curiam) (unpublished) (stating that "[a]s a witness at a judicial proceeding, [a court-appointed psychiatrist] has absolute immunity from § 1983 damages").

### D. Defendants Nurse Pam, Staff Worker Donna, Social Worker Martin, Dr. Daou, and Dr. Wenzel

Smith's claims of wrongdoing by Nurse Pam, Staff Worker Donna, Social Worker Martin, Dr. Daou, and Dr. Wenzel, fail to state a claim under § 1983 because their alleged misconduct did not violate Smith's constitutional rights.

Under the Due Process Clause, a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441` U.S. 520, 535 (1979). Nonetheless, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." Id. at 537. "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" Id. at 538 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169 (1963)) (alteration in original). "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id. at 539.

Here, Smith has not plausibly alleged facts from which the Court may reasonably infer that the defendants' separating Smith from Marcel, placing Smith on observation, and transferring

Smith to a different unit were not reasonably related to a legitimate governmental objective. The Court understands that Smith maintains his innocence, even as alleged here. Notwithstanding, WRCH staff had a legitimate objective in separating him, given the nature of the pending criminal charges, from an older teenager with whom staff had seen him in frequent and semi-private interactions.

### E.   WRCH Social Worker Hannen and WRCH Staff Members Aaron, C.J., Sean, Nielsa, Ali, and Siekron

The Court has concluded that, based upon review of the complaint, Smith's claim that Defendants Hannen, Aaron, C.J., Staff Member Sean, Nielsa, Ali, and Siekron violated Smith's constitutional rights by failing to protect him from an assault by Kyle is plausibly alleged.

### III.   Other Motions

#### A.   Motion to Request Correction to Complaint

Smith's motion to request correction to the complaint, D. 6, is ALLOWED with regard to Smith's requests for the complaint to include a demand for a jury and to assert individual capacity claims. The motion is DENIED with regard to Smith's request to assert official capacity claims. Neither a state nor state official acting in their official capacity is a "person" within the meaning of § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); see also Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) (stating that "[i]t is settled beyond peradventure, however, that neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action").

### B. Motion to Correct the Names of Defendants and Add Defendants to Action and Motions to Amend

The motion to correct the names of Defendants and add Defendants, D. 7, is ALLOWED only insofar as Smith asks that the Clerk to correct the names (or add the last names) of Defendants already named in the complaint.

This motion is DENIED insofar as Smith seeks leave to add defendants to this action. Similarly, Smith's motions to amend (i.e., motion to supplement, D. 35; motion to include additional Defendants, D. 39, motion to include documents, D. 48) are DENIED. Smith's various other efforts to amend his complaint through the filing of addenda, affidavits, supplements, and other documents containing allegations related to his original complaint are unavailing. A complaint only may be amended in accordance with Rule 15 of the Federal Rules of Civil Procedure.

### C. Motions Concerning Access to Photocopying at Barnstable County Jail

Smith's exigent motion for a permanent and immediate injunction, D. 9, and motion to request Court order, D. 11, are DENIED. In both motions, Smith claims that officials at the Barnstable County Jail are refusing to provide copies of legal materials. Smith has since been moved to a different facility, mooting his request that the Court compel Barnstable County Jail officials to make copies for Smith.

### D. Motion to Include Smith's Medical Records

Smith's motion to include WRCH medical records and non-medical records, D. 13, is DENIED. This action is at the pleading stage, which means that the Court treats all of Smith's well-pled factual allegations as true and does not, at this time, require Smith to provide evidence thereof. If this case proceeds to discovery, Smith shall respond to any request by the defendants

for production documents in accordance with the Federal Rules of Civil Procedure, unless otherwise agreed upon by the parties.

### E. Motions to Request Court Order for Production of Documents

Smith's motions for the Court to order Defendants to produce documents (i.e., motion to request Court order for production of documents and other records in possession of Defendants, D. 16; motion to request Court order for production of documents, video, and other records from Defendants, D. 33; motion to request Court order for production of documents and other records in possession of Defendants, D. 34) are DENIED. As the Court explained above, this action is at the pleading stage and not the discovery stage. Should this case proceed to discovery, Smith may seek production of documents from the defendants as provided under the Federal Rules of Civil Procedure.

### F. Motion Concerning the District Court Clerks

Smith's motion regarding the Clerk's Office's alleged failure to amend the complaint or revise docket entries as he requested in various motions, D. 32, is DENIED. In this motion, Smith complains that the Clerk's Office failed to amend his complaint and the case docket as requested in his earlier motions. The Clerk did not make the requested changes because the Court had not yet adjudicated his motions, which the Court now has in this Order.

## IV. Conclusion

For the foregoing reasons, the Court rules as follows:

1. The motion for leave to proceed *in forma pauperis*, D. 2, is ALLOWED. Pursuant to 28 U.S.C. § 1915(b)(1), the Court assesses an initial partial filing fee of $53.29. The remainder of the fee, $297.71, shall be collected pursuant to 28 U.S.C. § 1915(b)(2). The Clerk shall issue a notice for payment of prisoner filing fee and mail the notice and this order to the treasurer of the

institution having custody of Smith.

2. All of Smith's claims are dismissed without prejudice except for the claim concerning the alleged failure of Defendant Hannen and Staff Members (Defendants Aaron, C.J., Sean, Nielsa, Ali and Siekron) to protect him from the assault by Kyle.

3. The Clerk shall issue summonses for Hannen, Aaron, C.J., Staff Member Sean, Nielsa, Ali, and Siekron. Smith shall serve these defendants with this Order, a summons, and the complaint. Service must be completed in accordance with Rule 4 of the Federal Rules of Civil Procedure.

4. Smith must ensure that service of the summons and complaint upon each defendant is completed within 90 days of the date the summons is issued. Failure to comply with this deadline may result in dismissal of a defendant without prior notice from the Court. See Fed. R. Civ. P. 4; Local Rule 4.1 (D. Mass.).

5. Because Smith is proceeding *in forma pauperis*, he may elect to have the United States Marshals Service ("USMS") complete service with all costs of service to be advanced by the United States. See 28 U.S.C. § 1915(d). If requested by Smith, the USMS shall serve the summons, complaint, and this order as directed by the plaintiff. Smith is responsible for providing the USMS all copies for service and a completed USM-285 form for each party to be served. The Clerk shall provide the plaintiff with a USM-285 form and instructions for service by the USMS.

6. The motion to request correction to the complaint, D. 6, is ALLOWED in part and DENIED in part as set forth above. The Clerk shall note on the docket that Smith has requested a jury trial. Smith's claims, which are all asserted under 42 U.S.C. § 1983, shall be individual capacity claims.

7. The motion to correct the names of Defendants and add Defendants, D. 7, is ALLOWED only insofar as Smith asks that the Clerk correct the names of the defendants. The Clerk is directed to make said corrections on the docket of this case. The motion is otherwise DENIED.

8. The motion to supplement, D. 35, the motion to include additional defendants, D. 39, and the motion to include documents, D. 48, are DENIED.

9. Smith's other pending motions (D. 9; D. 11; D. 13; D. 16; D. 32; D. 33; D. 34) are DENIED for the reasons set forth above.

**So Ordered.**

       /s Denise J. Casper      
United States District Judge