UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEVEN L. SMITH,<br><br>        Plaintiff,<br><br>        v.<br><br>MARGARITA DAOU, et al.<br><br>        Defendants. | Case No. 21-cv-12056-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                        **March 6, 2025**

**I.      Introduction**

Plaintiff Steven L. Smith ("Smith"), a former patient at the Worcester Recovery Center and Hospital ("WRCH"), has filed this lawsuit *pro se* against various Defendants including Margarita Daou ("Daou"), M.D.; Sherry Hannen ("Hannen"), LSCW; Lisette "Donna" Santana ("Santana"), RN; Sara Maker ("Maker"), RN; Agatha Cretzu ("Cretzu"), RN; and Carlton Kemp ("Kemp"), MHW (collectively, "Defendants"). D. 1, 86. Smith alleges Defendants failed to protect him from an assault by another patient at WRCH on or about April 9, 2021, in violation of 42 U.S.C. § 1983. D. 86 ¶ 14. All defendants, except Daou, have been dismissed. D. 156, 161-62, 183. Daou has now moved for abstention and dismissal pursuant to Colorado River Water Conservation Dist. v.

1

United States, 424 U.S. 800 (1976).  D. 172.  For the reasons stated below, the Court DENIES the motion.  Id.[1]

## II. Standard of Review

Generally, "federal courts must abide by their 'virtually unflagging obligation' to exercise their lawful jurisdiction and resolve the matters properly before them."  Nazario-Lugo v. Caribevisión Holdings, Inc., 670 F.3d 109, 114 (1st Cir. 2012) (quoting Colo. River, 424 U.S. at 817).  "This duty, however, is not absolute" and certain exceptional circumstances warrant departure from the general rule.  Id. at 114-15 (citing Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)).  Colorado River abstention "allows federal courts in limited instances to stay or dismiss proceedings that overlap with concurrent litigation in state court."  Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 21 (1st Cir. 2010).  The Court must only depart from its obligation to exercise jurisdiction after carefully considering both its obligation to do so and the combination of factors that would counsel against such exercise.  See Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 71-72 (1st Cir. 2005) (citing Colo. River, 424 U.S. at 818).

## III. Factual Background

---

[1] Smith has filed multiple motions.  His motion to object to Daou's abstention motion, D. 178, is an opposition to Daou's motion to dismiss and the Court has considered it in resolution of the Daou's pending motion, but Smith's motion does not require a separate ruling.  The Court has also considered Smith's motion to object to having the case transferred to the Commonwealth, D. 177, in resolution of Daou's motion, but DENIES D. 177 as moot given its decision on the motion to dismiss.  Since Daou has not formally requested referral to a medical malpractice tribunal or medical expert, the Court DENIES Smith's objection to same, D. 186, without prejudice.  The Court also DENIES the motion to request status hearing, D. 188, given the resolution of the pending motion to dismiss and the Court's anticipated solicitation of the parties for a schedule for the remainder of this case.  The Court DENIES Smith's motion to include documents and arguments in support of plaintiff's offer of proof, D. 191, given its resolution of the motion of dismiss on the papers.  Lastly, the Court ALLOWS Smith's entry of his change of address.  D. 192.

The following facts are drawn from the allegations in Smith's amended complaint and the attached exhibits. D. 86.

On March 25, 2021, Smith was committed to WRCH for an evaluation of his competency to stand trial for the alleged rape of a child. D. 86 ¶ 1; D. 86-1 at 6, 8, 47–48. While at WRCH, Smith's treatment team consisted of Daou, Hannen, Cretzu and Maker ("Treatment Team"). D. 86 ¶¶ 10, 12. Smith's room was at the far end of a locked hospital wing, staffed by Kemp and others. Id. ¶¶ 10, 13. A nineteen-year-old patient named Kyle stayed in the room adjacent to Smith's; neither room had "locks on the doors." Id. ¶ 10. As alleged by Smith, Kyle was a "violent" person, with "a history of attacking people." Id. ¶ 9.

Sometime after Smith's arrival at the WRCH, Kyle began "making threats" toward Smith and "calling [him] a child rapist." Id. ¶ 10. Smith alleges that staff had told Kyle his criminal charges. Id. Fearful of Kyle, Smith raised his concerns "at more than one [t]eam [m]eeting" to the Treatment Team. Id. Smith also called and left voicemails for Daou and Hannen to report the alleged threats, but "no action was taken" in response. Id. ¶ 11.

On April 9, 2012, Smith met again with the Treatment Team. Id. ¶ 12. He "told all of them that Kyle's threats were becoming more and more brazen," to the point where Kyle was openly telling Smith and staff "that he was not playing, you know me, you better move this rapist." Id. ¶ 12. Smith then returned to his WRCH wing "where Kyle's ire grew" as Kemp and other staff members "all stood around trying to calm Kyle down." Id. ¶ 13. The staff told Smith, "[w]e can't move him" because "there's no room" and added that they "don't make moves" because such decisions are "up to the doctors/nurses." Id. "[N]ot long after leaving the team meeting on [April 9, 2021]," Kyle allegedly assaulted Smith. Id. ¶ 14.

IV.     **Procedural History**

    A.     <u>**Federal Proceeding**</u>

Smith initiated this lawsuit on December 15, 2021 against Defendants. D. 1. He later moved to amend the complaint, which this Court allowed after a preliminary screening of the amended complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A. D. 83. Specifically, the Court allowed Smith to pursue only his claim that "certain staff at the Worcester Recovery Center and Hospital [ ] failed to protect Smith from assault by another patient at WRCH on or about April 9, 2021" and dismissed the remaining claims; the Court also dismissed the case as to other defendants. D. 83. Defendants Santana, Hannen, Maker and Kemp (the "Commonwealth Defendants") moved to dismiss Smith's amended complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(5). D. 112. Defendants Daou and Cretzu ("Individual Defendants") separately moved to dismiss the amended complaint pursuant to the same rules. D. 116. On March 4, 2024, the Court allowed the Commonwealth Defendants' motion to dismiss as to Santana because "none of the allegations directed at [her] bear any relation to Smith's failure-to-protect claim[,]" D. 156 at 9, and the Individual Defendants' motion to dismiss as to Cretzu for insufficient service of process pursuant to Fed. R. Civ. P. 4(m), <u>id.</u> at 22. The Court denied the motions to dismiss as to the remaining defendants. <u>Id.</u> at 25.

On May 8, 2024, the remaining Commonwealth Defendants reached a settlement with Smith, D. 160, and the Court entered a settlement order of dismissal and terminated the case. D. 161. On July 15, 2024, Smith filed a motion to reopen the case on the grounds that the settlement applied only to the Commonwealth Defendants, D. 166, which the Court allowed on October 28, 2024 "to the extent that the case is reopened as the one remaining defendant, [Daou]." D. 181. On August 6, 2024, Daou moved for dismissal on <u>Colorado River</u> abstention grounds. D. 172.

4

B.   **State Court Proceeding**

Six months after filing the initial complaint in this Court, on July 17, 2022, Smith initiated a separate action in the Worcester Superior Court ("Superior Court"), Smith v. Daou, 2285CV00686 (Mass. Super. Ct. 2022), against Daou and other defendants. R. 1; D. 173 at 17.[2] On January 20, 2023, Smith filed an amended complaint, R. 50, and later filed a second amended complaint on April 24, 2023. R. 78; D. 173 at 27. The defendants moved to dismiss, R. 20; R. 47; R. 68, and filed a response to the second amended complaint, R. 78.

Considering both amended complaints together, the Superior Court construed Smith's claims to include: "(1) that his civil rights were violated when he was given a treatment plan at WRCH when he was merely sent there for a competency to stand trial [] evaluation; (2) that the defendants defrauded MassHealth by charging MassHealth for his unnecessary and/or wrongful treatment at WRCH; and (3) that the defendants played a negligent and/or intentional role in [Smith] being assaulted by another patient." R. 85 at 4 & n. 6; D. 173 at 39 & n. 6. The Superior Court allowed the defendants' motions to dismiss as to Smith's civil rights claim as to his treatment plan and his fraud claim as to MassHealth. R. 85 at 8; D. 173 at 44. The Superior Court also allowed the Commonwealth defendants' motions to dismiss as to Smith's negligence claim to the extent that they were "acting within the scope of their employment" because claim is barred under the Massachusetts Torts Claim Act. Id. The Superior Court, however, denied the motions to dismiss "to the extent that [Smith] asserts (a) a negligence claim against the individual defendants to the extent that they were not public employees acting within the scope of their employment and (b) intentional tort claims against all defendants." R. 85 at 8–9 (emphasis in original); D. 173 at

---

[2] Citations to the docket filings in the Superior Court action shall be to "R. ___." Most of these filings are also attached to Daou's memorandum, D. 173 at 17 *et seq.*

5

43-44 (same).  On May 28, 2024, the parties entered into a stipulation of dismissal as to all claims against the Commonwealth defendants.  R. 115.

V.  Discussion

    A.  **Under *Colorado River*, Dismissal of this Matter is Not Warranted**

Daou seeks dismissal of this case based upon Colorado River abstention.  D. 173 at 3.  When considering the application of this doctrine, the Court must address whether exception circumstances warrant "the abdication of jurisdiction in favor of parallel state court litigation."  KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003).  The First Circuit has explained that a court may consider the following, nonexhaustive factors to determine the exceptional circumstances that warrant Colorado River abstention:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Id. (citing Burns v. Watler, 931 F.2d 140, 146 (1st Cir. 1991)).  "No one factor is meant to be determinative, but rather courts must make a 'carefully considered judgment'" taking into account each factor and the overall presumption in favor of exercising jurisdiction.  Rio Grande, 397 F.3d at 72 (quoting Colorado River, 424 U.S. at 818).  The mere existence of pending, parallel state litigation does not necessitate abstention absent exceptional circumstances, Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 10 (1st Cir. 2002).  If the balance of factors, however, mandates abstention, the Court must then decide whether the more appropriate disposition of the case is dismissal or a stay of proceedings.  Jiménez, 597 F.3d at 31.

The Court considers the Colorado River factors in turn.  First, there is no "res" in this action.  Leiva v. Dept. of Correction, No. 20-cv-11433-PBS, 2021 WL 3493713, at *3 (D. Mass.

6

Aug. 9, 2021); Rojas-Hernandez v. Puerto Rico Elec. Power Auth., 925 F.2d 492, 496 (1st Cir. 1991). Second, both this Court and the Superior Court are in Massachusetts and, although they are in different cities, it cannot be said that there is geographical inconvenience for the parties in this forum. Leiva, 2021 WL 3493713, at *3. Neither of these factors weighs in favor of abstention.

Third, however, "there is significant concern of piecemeal litigation" here against Daou. Leiva, 2021 WL 3493713, at *3. "The 'piecemeal litigation' to be avoided is something more than just the repetitive adjudication that takes place in all cases implicating Colorado River doctrine." Jiménez, 597 F.3d at 29. "Weight may be afforded to the piecemeal litigation factor only where the implications and practical effects of litigating the parallel actions provide an *exceptional basis* for surrendering federal jurisdiction, such as a clear competing policy or some special complication." Nazario-Lugo, 670 F.3d at 116 (citing Jiménez, 597 F.3d at 29) (emphasis in original). "'[C]oncerns about piecemeal litigation . . . focus on the implications and practical effects of litigating suits deriv[ed] from the same transaction in two separate fora, and weigh in favor of dismissal only if there is some exceptional basis for dismissing one action in favor of the other.'" Chandler v. New Hampshire, No. 22-cv-373-JL, 2022 WL 17418560, at *2 (D.N.H. Nov. 10, 2022) (quoting Jiménez, 597 F.3d at 29). The one remaining claim against Daou here and the claims pending in state court arise out of the same transaction, namely whether Daou's alleged failure to protect entitle Smith to relief under § 1983 here or the negligence claim (against Daou for acting in a personal capacity) and intentional tort claim pending in state court. The mere possibility that a defendant might be exposed to liability in more than one court is to be expected where there are parallel cases proceeding against a defendant and is not so exceptional as to warrant "surrendering federal jurisdiction." Nazario-Lugo, 670 F.3d at 116; see Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir. 1991) (holding that "[t]he mere fact that the issue of liability will arise in both

7

suits and that proof may be overlapping is not necessarily significant unless this fact, in a particular context, has potential for unfairness or harm" when assessing the piecemeal litigation factor under the Colorado River abstention analysis).

Still, there is a concern about judicial economy in having these two proceedings go forward. As for Daou's argument that judicial economy counsels against same, she acknowledges that the federal § 1983 claim implicates a different theory of liability than the state negligence and intentional tort claims, requiring Smith to plead plausibly that Daou's conduct was not merely an error in professional judgment (as required to state a negligence claim), but that her conduct was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." D. 173 at 5 (quoting Youngberg v. Romero, 457 U.S. 307, 314 (1982)). As such, Daou argues, allowing this case to proceed concurrently with the Superior Court case would increase Smith's burden of production because he must find sufficient expert support "to speak to the relevant standards of care, the alleged departure therefrom, and a causal relationship to the claimed injuries" for both claims. Id. at 4. That is, it is hard to see how Smith could show that Daou's alleged conduct was such a "substantial departure from accepted professional judgment, practice or standards" as required for his claim here if he fails to show that she was merely negligent in failing to protect him from harm from another inmate as the crux of his negligence claim in the state case. Still, the First Circuit has emphasized that "routine inefficiency of multiple proceedings . . . is not enough to weigh" in favor of abstention. AUI Partners LLC v. State Energy Partners LLC, 742 F. Supp. 3d 28, 50 (D. Mass. 2024). Moreover, "Section 1983 was adopted to provide alternative, supplemental relief to persons who almost always have a state law remedy." Williams v. Oak Park City Sch. Dist., No. 06-cv-12512-DT, 2007 WL 1063346, at *2 (E.D. Mich. Apr. 6, 2007) (citing

Monroe v. Pape, 365 U.S. 167, 183 (1961), overruled on other grounds, Monell v. Department of Social Servs., 436 U.S. 658 (1978)).  The Court notes that Smith has raised a § 1983 claim in his federal case, which he apparently has not in his state court case (although he could have done so, See Kando v. Rhode Island State Bd. of Elections, 880 F.3d 53, 61 n.4 (1st Cir. 2018) (holding that "[s]tate courts possess concurrent jurisdiction over section 1983 claims") (citing Felder v. Casey, 487 U.S. 131, 139 (1988)).  This factor weighs, at least to some extent, in favor of abstention.

As to the fourth factor as to the order in which the forums obtained jurisdiction, "[i]n assessing this factor, courts do not merely look at in which court a complaint was first filed, 'but rather in terms of how much progress has been made in the two actions' at the time the Colorado River assessment is done." AUI Partners LLC, 742 F. Supp. 3d at 51 (citations omitted).  Although filed slightly later than this case, the state court case has proceeded past the motion to dismiss stage, see generally Smith v. Daou et al., 2285CV00686 (Mass. Super. Ct. as of March 4, 2025), which is a factor that slightly favors abstention.

With the fifth factor, the Court considers whether state or federal law controls this case. Federal law controls here as Smith's remaining claim in this case is a § 1983 claim.  D. 86 at 1. Daou, however, contends that abstention "is well-advised here because no constitutional questions need be reached where the plaintiff's state court negligence claim is in essence merged with his civil rights claims" under § 1983.  D. 173 at 7 (emphasis in original).  Nonetheless, "the presence of federal-law issues must always be a major consideration weighing against" surrendering the Court's jurisdiction. Rojas-Hernandez, 925 F.2d at 496 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983)).  Accordingly, this factor does not tip in favor of abstention.

9

The sixth factor, the adequacy of the state forum, is neutral because "both [courts] are capable of determining the parties' rights and obligations." Massachusetts Biologic Lab'ys of the Univ. of Massachusetts v. MedImmune, LLC, 871 F. Supp. 2d 29, 37 (D. Mass. 2012).

With respect to the seventh factor, the Court must assess the nature of the claims because "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation." Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 15 (1st Cir. 1990) (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 17 n.20). Reactiveness is "where one party files a federal action in reaction to an adverse ruling in state court" and vexatiousness "ordinarily refers to a situation where one party files a federal action merely to cause a delay or to force the other side to incur the additional costs associated with litigating the same issue in two separate courts." Paul Revere Variable Annuity Ins. Co. v. Thomas, 66 F. Supp. 2d 217, 222 (D. Mass. 1999) (citing Villa Marina, 915 F.2d at 15), aff'd sub nom. Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15 (1st Cir. 2000). There is some merit to Daou's argument that Smith has attempted to use the fora for redress when he was unhappy with the other forum's decisions or pace. On the first page of his state complaint, Smith indicated that he had filed a Section 1983 claim in federal court but he "ha[d] not been given leave to serve defendants a copy of the [c]omplaint and [s]ummons" in the federal case, D. 173 at 13, 18, which Daou contends shows that Smith was improperly using the Superior Court as "an appellate jurisdiction to relitigate . . . unfavorable progression of his federal case." Id. at 13. Similarly, Daou argues that the interrogatories Smith sent to some parties who were already dismissed by the settlement agreement reveals "vexatious intentions." Id. Still, even assuming *arguendo* that Smith had engaged in some improper conduct in the litigation process does not necessarily show that he filed either action to "cause a delay or force the other side to incur

10

additional costs." Paul Revere Variable Annuity Ins. Co., 66 F. Supp. 2d at 222. Moreover, the Court must consider such conduct in the context of Smith's status as a *pro se* litigant and, as such, while the conduct complained of here can conceivably reflect vexatious intent, it may also reflect a lack of understanding of the litigation process. See Siri v. Town of Hingham, 662 F. Supp. 3d 44, 49 (D. Mass. 2023) (citing Lefebvre v. Commissioner, 830 F.2d 417, 420–21 (1st Cir. 1987)). For these reasons, this factor does not tip in favor of abstention.

Lastly, removal jurisdiction is not relevant here as Smith had filed the federal case before bringing claims in the Superior Court. See Jiménez, 597 F.3d at 23, 28 (concluding that the eighth factor, respect for removal principles, was irrelevant where the plaintiff had filed a federal action before filing an action in the court of the Commonwealth of Puerto Rico).

Given the analysis of above as to all of the relevant factors, Colorado River abstention is not warranted.

### B. Even If Colorado River Abstention Was Warranted, The Court Would Not Dismiss This Case

"In this Circuit, Colorado River abstention has historically resulted in a stay" instead of outright dismissal because the First Circuit "see[s] no harm to judicial economy in going [this] more cautious route." Id. at 32. Here, the Court concludes that Daou has presented no exceptional circumstance that would warrant dismissal in lieu of a stay. This is particularly true where the Court retains its inherent authority to determine and sequence the further course of this litigation so that, for one example, there is no duplication of discovery between this matter and that in state court  For this additional reason, Daou's motion for dismissal based upon Colorado River is denied.

### C.    **Forum Non Conveniens is Also Not a Basis for Dismissal Here**

Daou also argues that this action should be dismissed under the doctrine of forum non conveniens. D. 173 at 9–10. "Forum non conveniens gives courts the discretion 'to dismiss a case because the chosen forum (despite the presence of jurisdiction and venue) is so inconvenient that it would be unfair to conduct the litigation in that place.'" Curtis v. Galakatos, 19 F.4th 41, 46 (1st Cir. 2021) (quoting Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 140 (1st Cir. 2021)).

"Because the doctrine of forum non conveniens permits a federal court to deprive a plaintiff of availing herself of her 'home forum' even when she otherwise would be legally entitled to bring suit in it, the bar for a district court to dismiss a suit pursuant to the doctrine is a high one." Nandjou, 985 F.3d at 141. "Meeting that heavy burden involves two steps. First, the defendant has a burden to show that an 'adequate forum exists.'" Curtis, 19 F.4th at 47 (quoting Shinya Imamura v. Gen. Elec. Co., 957 F.3d 98, 106 (1st Cir. 2020)). "[A]n adequate alternative forum exists when '(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly." Shinya Imamura, 957 F.3d at 106 (quoting Mercier v. Shaton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991)). Here, as discussed above, the Superior Court is accessible to both parties and is adequate to adjudicate Smith's § 1983 claim. Accordingly, the Superior Court is an adequate forum.

Next, the Court considers whether public and private interests "strongly favor litigating the claim in the second forum." Nandjou, 985 F.3d at 142 (emphasis in original) (internal citation omitted). "If, on balance, the interest factors are about equal, that's not enough to surmount the defendant's heavy burden." Curtis, 19 F.4th at 48 (citing Nandjou, 985 F.3d at 141). Public interest factors to be considered include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in

12

having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Id. (internal quotation marks omitted) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)).

Here, public interest factors do not weigh in favor of dismissal. Daou does not argue that any administrative difficulties would arise from maintaining Smith's action in this Court. The local interest will not be undermined here as both this Court and the Superior Court are in the same state. Relatedly, because the events giving rise to the claims in both this action and the Superior Court action occurred in Massachusetts, no citizen in an unrelated forum will be burdened with jury duty. Lastly, conflict of laws is not implicated because the only claim raised in this action is a §1983 claim. Accordingly, public interest factors do not favor dismissal.

Private interest factors include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [and the] possibility of view of premises, if view would be appropriate to the action." Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000) (alterations in original) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Here, "[t]he alternative forum advanced by [Daou]" is within the same state as this Court "and would have no effect on the parties' ease of access to sources of proof, the availability of compulsory process, the costs of obtaining witnesses or the enforceability of judgment." Kettenbach v. Demoulas, 822 F. Supp. 43, 46 (D. Mass. 1993). Accordingly, the private factors do not weigh in favor of dismissal. For the abovementioned reasons, forum non conveniens does not counsel dismissal here.

Daou argues that the Court should dismiss the action because "the Superior Court is a far more appropriate forum for [Smith] to continue to pursue his claims because the damages sought

are compensable under the tort theories of liability already being litigated there. Id. at 10. Moreover, Daou contends that the case should be dismissed because a finding of liability in either action allegedly requires Smith to submit his case before a medical malpractice tribunal pursuant to Mass. Gen. L. c. 231, § 60B, which implicates state law and makes the Superior Court a more appropriate forum. Id.

First, neither argument adequately show that maintaining this action in federal court would be "so inconvenient that it would be unfair to conduct the litigation in that place." Curtis, 19 F.4th at 46 (quoting Nandjou, 985 F.3d at 140). Second, contrary to Daou's assertion, Mass. Gen. L. c. 231, § 60B does not compel dismissal here. Pursuant to the statute, before proceeding in court, a plaintiff's medical malpractice claim "shall be heard by a tribunal . . . [which] shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." Mass. Gen. L. c. 231, § 60B. Even assuming *arguendo* that referral to a medical malpractice tribunal is appropriate here, but see Abernathy v. Anderson, 395 F. Supp. 3d 123, 133 (D. Mass. Jul. 31, 2019) (noting that the referral to a medical malpractice tribunal does not apply to Eighth Amendment constitutional claims) (collecting cases), "[r]eferring Massachusetts state law claims to a medical malpractice tribunal is appropriate when such claims are in federal court pursuant to either diversity or supplemental jurisdiction," Wittkowski v. Spencer, 249 F. Supp. 3d 582, 584 (D. Mass. 2017) (citations omitted), and Smith would have this remedy in either forum.

For these reasons, Daou's motion to dismiss on the grounds of forum non conveniens is denied.

## VI.    Conclusion

For the aforementioned reasons, the Court DENIES Daou's motion to dismiss. D. 172.

14

**So Ordered.**

/s/ Denise J. Casper
United States District Judge